

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ARTHUR GROEN, )<br>)<br>Plaintiff, )<br>)<br>)<br>)<br>) <br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security )<br>)<br>Defendant. ) | No. 04 C 8232<br><br>Judge John A. Nordberg |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Arthur Groen seeks social security disability benefits, claiming that he cannot work a full day because of pain in his right arm. The pain came from a 1984 accident and was not corrected by two surgeries and four years of physical therapy. Plaintiff's doctor eventually concluded that the pain would be permanent and that plaintiff could only work four hours a day and could not lift more than 9 pounds with his right arm. Plaintiff experienced a few other medical problems, most notably a heart attack in 1993, which led him to have shortness of breath, but the right arm injury is the main problem that he claims prevents him from working full-time.

After a hearing, the administrative law judge denied plaintiff's request for benefits in a written ruling. He concluded that plaintiff's testimony was not credible, apparently because he thought plaintiff had intentionally exaggerated the extent of his injuries, and also concluded that plaintiff could work an eight-hour day by simply using his left hand alone after his right arm

became tired and sore. Plaintiff argues that the judge ignored key pieces of evidence and provided an insufficient explanation to justify these conclusions. We agree and remand this case for a more complete analysis.

## FACTUAL BACKGROUND

In 1976, plaintiff began working as a truck driver but had to stop in 1984 when he injured his right elbow. As he explained at the hearing, "I was opening a barnyard gate, and the handle flew and took my arm with it, and stretched it all the way up, messed up a nerve in here, which is still messed up." (R. 51.) The medical diagnosis was chronic right lateral epicondylitis of the elbow. (R. 142.) Plaintiff underwent two surgeries to repair the damage and to relieve the pain. The first surgery, in 1985, was unsuccessful. A second surgery in 1987, performed by Dr. William Dobozi, also did not get rid of the pain. Plaintiff attended physical therapy sessions regularly over several years, but the pain still did not go away.

Plaintiff's initial hope was that he could return to his job as a truck driver but he was not able to do so because he could not lift more than nine pounds. After a period of unemployment, he obtained a part-time job as an auto mechanic at Wayne's Auto Repair. This job was obtained through a government program located by plaintiff's worker's compensation provider. Plaintiff worked in this job for several years. But in 1993, he had a heart attack and then angioplasty for a blocked artery. After the heart attack, plaintiff suffered from shortness of breath and was also bothered by the fumes in the auto shop. So in 1994 he was forced to quit this job and has not worked since then.

After he quit working, plaintiff experienced other medical problems. Most notably, he suffered a stroke in 2000 and had to curtail his activities at home. The stroke also caused problems with his left hand.

In August 2000, plaintiff filed his initial application for benefits. He first alleged a disability beginning in June 30, 2000. After this application was denied, plaintiff requested reconsideration, alleging an earlier date of disability of June 1, 1994. This request was also denied. Plaintiff filed a timely request for a hearing before an administrative law judge. On Nov 14, 2002, a hearing was held before Administrative Law Judge John L. Mondi. On Dec 11, 2002, the administrative law judge denied the request in a 6-page ruling.

In this ruling, the administrative law judge applied the five-step evaluation under 20 C.F.R. § 404.1520. He first concluded that plaintiff was not performing substantial gainful work because he was only doing part-time work; that he had a medically determinable impairment from his right arm injury; and that plaintiff's impairment was not a "listed impairment." (R. 22.) He then assessed plaintiff's residual functional capacity to determine whether plaintiff could adjust to other work "existing in significant numbers in the national economy." (*Id.*)

The analysis of plaintiff's residual functional capacity is the key disputed point in the analysis and the judge's analysis consists of the following two paragraphs:

> The claimant's testimony, including that of pain and functional limitations, at least to the extent he is alleging disabling symptoms during the period in issue, was not credible when compared against the objective evidence and evaluated using the factors in SSR 96-7p. For example, at one point he testified that he could not lift more than 9 pounds. However, it later became clear that that was a limitation from a doctor only on use of his right hand, consistent with his later testimony that his left hand was unimpaired until year 2000.
>
> Counsel has obtained an opinion of treating physician Khan that might support disability currently (Exhibit 5F). However, the opinion is not probative as to

-3-

claimant's condition as of his date last insured of September 30, 1995, as the opinion reflects claimant's condition after his cerebral vascular accident in 2000. Further, even as to claimant's current condition, Dr. Khan's opinion is not consistent with the evidence. For example, Dr. Khan represents that claimant cannot use his left hand. However, claimant was observed to use that hand at the hearing to close the door as he departed from the hearing room with no apparent difficulty. (Further, he also was observed to use his right hand to open the door, also in no apparent difficulty.) In addition to these observations, treatment records for the period in question show right elbow limitations that did not preclude light duty, even if subject to a nine-pound lifting restriction with the arm. And while there is a medical report of a work limitation to four hours a day, even accepting a medical basis for such a limitation, there is no medical reason to conclude that it pertains to anything other than claimant's use of his right arm. Indeed, claimant testified to having been able to lift 15 to 20 pounds with his left hand when he was working and that his left-hand problem began with his stroke. Further, his current activities involving antique cars suggest some capabilities beyond those reflected in Dr. Khan's opinion.

(R. 22-23.)

Based on this assessment, the judge concluded that plaintiff could not return to his past work as a truck driver. (R. 23.) The judge next assessed whether plaintiff could perform jobs in the "light work" category and concluded that he needed to rely on the testimony of the vocational expert who testified at the hearing. (R. 24.) As the judge explained in the ruling, he posed several hypothetical questions posed to the vocational expert at the hearing. These questions assumed that the individual in question was 48 years old, with limited education, and a right arm that impairment that limited him from lifting more than 9 pounds. (R. 24.) Based on these assumptions, the vocational expert had testified that the individual could perform unskilled jobs in the Chicago area as cashier/checker (39,500 jobs), a filler machine operator (23,700 jobs), production inspector (14,219 jobs), or a routing clerk (1,620 jobs). (R. 24.) Relying on this testimony the judge concluded that plaintiff was not disabled.

This decision was upheld by the Board and this lawsuit followed. Plaintiff argues that the administrative judge's ruling is incomplete and flawed and requests that we either remand this case for a more complete determination or rule in his favor as a matter of law. The government, relying primarily on evidence and legal authorities not discussed in the judge's opinion, argues that the judge's ruling is supported by substantial evidence. Both sides move for summary judgment.

## DISCUSSION

In reviewing the administrative law judge's decision, we ask whether substantial evidence supports the decision and must defer to any credibility findings. The Seventh Circuit has described this review process in various ways. It has noted, for example, that an administrative law judge need not discuss "every piece" of evidence but that the judge at the same time may not ignore an "entire line" of evidence. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). The reason is that the reviewing court must be able to "tell" whether the decision rests on substantial evidence and cannot do so if the judge fails to "articulate reasons for accepting or rejecting entire lines of evidence." *Id.*; *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The Seventh Circuit has also stated that a reviewing court need not defer to credibility findings based on "errors of fact or logic." *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). And in a more metaphoric description, the Seventh Circuit has stated that the administrative judge's opinion must "build a bridge" from the evidence to the conclusion. *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998).

After analyzing the hearing transcript, and the supporting exhibits, as well as the parties' briefs, we find that the judge's ruling lacks sufficient explanation regarding both the factual findings and legal tests used to reach the conclusions.

One initial problem we faced in reviewing the ruling is that it omits source details and only refers to the evidence in general terms, thus making it difficult to verify and analyze the evidence first-hand. In the two key paragraphs quoted above, which are the relevant portions for purposes of our analysis, the ruling contains no citations to specific pages of the transcript nor to pages of the supporting exhibits. There is only one reference to an exhibit (5F), but that is not even clear as it is a multi-page exhibit. The ruling instead uses vague descriptive labels such as "objective evidence," "treatment records," "a medical report," and a "current activities involving antique cars." Which treatment records? Which report? What is the specific evidence? The ruling does not provide the details, and the exhibits contain many treatment records as plaintiff had two surgeries, was treated by multiple doctors, and attended many physical therapy sessions.

The lack of citation, in addition to imposing more work on this Court, also increases the possibility that we will mis-interpret the basis for the judge's conclusions. In a few places, we have had to make an educated guess as to the precise statement or piece of evidence the judge relied on. The most significant issue is the judge's finding that plaintiff's entire testimony was not credible, and thus should be disregarded, because he (allegedly) falsely suggested that he could not use either his right or left hand in 1995 when in fact only his right hand was limited at that time. Where in the record did plaintiff make this supposedly misleading assertion and what exactly did he say? The opinion only says that plaintiff made this statement at "one point" in the

hearing. It is not clear where this point is as plaintiff discussed the issue several times. *See* R. 49, 52, 53, 54, 58, 59, 60. It is important to know exactly what plaintiff said because there is a big difference between intentionally trying to dupe the judge and between mistakenly giving an unclear answer. The ruling does not quote the testimony, or even paraphrase it in any detailed way. The problem is compounded because the judge concluded that plaintiff's earlier testimony was misleading only by comparing it to plaintiff's testimony at a "later" point. Again, no page number is given, no quotation, and no paraphrase. We are thus required to hunt for the these earlier and later "points."

In addition to the relatively sparse factual details, the ruling contains little explanation of the legal tests and authorities relied on. The only legal test mentioned in the relevant two paragraphs is a passing reference to SSR 96-7p. (R. 23.) This reliance on only one social security ruling stands in contrast to the government's brief, which cites to numerous social security rulings, Seventh Circuit decisions, and other legal authorities.[1] And the judge's purported application of SSR 96-7p is not especially illuminating. All he said was that plaintiff's testimony was not credible "using [the] factors in SSR 96-7p." (*Id.*) What are those factors and how did the judge apply them to the testimony and evidence? The ruling does not say but only provides a conclusion. However, SSR 96-7p states in clear terms that the administrative judge may not make a "single, conclusory statement" that the claimant's allegations are not credible:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The

---

[1] *See, e.g.,* Gov. Br. at 8 (citing to SSR 83-12); at 9 (citing to 20 C.F.R. § 404.1527); at 10 (citing to 20 C.F.R. § 404.1529); at 11 (citing to SSR 83-20).

-7-

> determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.

SSR 96-7p, 1996 WL 374186, * 2. The regulation further states that, if there is a medically determinable impairment, the adjudicator "must" evaluate the "intensity, persistence, and functionally limiting effects of the symptoms," a process that requires the adjudicator to make a finding about the individual's statements about both the pain and its functional effects. *Id.* at *1.

Here, plaintiff submitted evidence of a medically determinable impairment. Specifically, plaintiff submitted medical records regarding his surgeries, his follow-up visits to the doctor who performed the surgery, his progress through therapy, and his treatment from a second doctor regarding his heart attack and other symptoms. In fact, there is little evidence to question the basic point that plaintiff experiences pain and fatigue in his right arm after working for four hours. Yet, the judge never gave any indication in his ruling to show that he seriously addressed this evidence. Among other things, he failed to make a finding regarding the intensity of plaintiff's pain, or its persistence, or the limiting effects. His ruling is thus contrary to the direct command of SSR 96-7p and this failure is by itself grounds for remanding the case.

The judge's ruling focused instead on three issues of questionable relevance and for which there is little evidentiary support. First, as noted above, the judge found that plaintiff tried to mislead him by suggesting that his left hand was limited in 1995. As a result, the judge disregarded *all* of plaintiff's testimony. However, after reading the hearing transcript, we can find no statement that could be reasonably construed as an intentional attempt to mislead the judge or that even could be viewed as ambiguous. The following exchange illustrates the point:

| | | |
|---|---|---|
| Q. | You had the right arm injury? | |
| A. | In '84. | |
| Q. | In '84. | |
| A. | Yeah. | |
| Q. | All right. And then [when] did you have the stroke? | |
| A. | 2000. | |
| Q. | All right. And you've also indicated in your application, you had left hand problems, when did they begin? | |
| A. | In June, I went to the hospital. | |
| Q. | Of what year? | |
| A. | Of 2000. | |

(R. 52.) The rest of the transcript is similar, and the questions asked by the judge do not suggest that he ever was confused on this point during the hearing. *See also* R. 59 ("Q. Was there any limitation[] on the use of your left arm at that time [*i.e.* in 1994]? A. At that time, no.").

Even if plaintiff's testimony could somehow be viewed as ambiguous, it would still be weak evidence that plaintiff was intentionally trying to mislead the judge. One reason is that the issue could be easily confused. It is undisputed that, after his stroke in 2000, plaintiff did have limitations on both hands. So it makes a difference which time period was being asked about. The issue re-surfaced several times and the questioning proceeded in a fluid manner with the judge asking about both the 1995 and 2000 periods. Another reason is that plaintiff only reached the tenth grade, after being held back several times in school, and could not use a computer, had trouble reading a newspaper because he did not know enough words, and did not use a stove because he would forget to turn it off due to memory problems from his stroke. (R 46-47, 49,

56.) The third reason is that the judge based his conclusion that plaintiff had testified in a misleading way *earlier* in his testimony on the fact that he *later* testified truthfully. If plaintiff were trying to deceive the judge, this would be an odd way of going about it. The better and simpler explanation is that, at best, he was mistaken or confused.

Second, the judge concluded that one of plaintiff's doctors, Dr. Khan, misleadingly exaggerated the extent of plaintiff's left hand injuries in a 2001 report. The judge's focus on this factual issue is surprising given that it was so unrelated to the relevant issue in the case. Dr. Khan was plaintiff's general physician who was not the doctor who plaintiff saw for his right arm problems. That doctor was Dr. Dobozi who performed one of the surgeries on plaintiff's right arm and who saw him on regular visits thereafter and who reviewed the reports from the physical therapists. Yet, the judge glossed over the reports from Dr. Dobozi and focused on this one statement of Dr. Khan, which the judge then used in a round-about way to cast doubt on plaintiff's credibility.

Not only is this issue peripheral, it is not supported by any clear evidence. What is the evidence that Dr. Khan exaggerated plaintiff's left hand limitations? According to the judge, Dr. Khan stated in a medical report (Exhibit 5F) that "claimant cannot use left hand." (R. 23.) Because the judge did not cite to a specific page in Exhibit 5F nor quote the statement in full, we are not entirely sure which statement he was analyzing, but our best guess is that he relied on the following statement at page 203 of the record:[2] "Pt. unable to work because of old injury (R) Elbow & nerve damage. Can't use (L) hand because of CVA June 2000." The judge interpreted this statement as being a claim by Dr. Khan that plaintiff could not use his left hand for *any*

---

[2]The other possibility would be a somewhat similar statement on page 201.

-10-

activity, even the most trivial. The judge then concluded that Dr. Khan's assertion was undermined because plaintiff, when he left the hearing room, closed the door with his left hand with "no apparent difficulty." (R. 23.)

This argument is shaky in several respects. When read in context, Dr. Khan's statement at page 203 appears to be merely an explanation for why plaintiff cannot work. In other words, all he was saying is that plaintiff's left hand limitations were enough to keep him from using that hand in a full-time job. The judge read the statement in a more categorical way, interpreting the word "use" to mean that plaintiff could not use his left hand for any activity, however small and limited in time. We find that the former interpretation is the more reasonable one; at a minimum, however, Dr. Khan's statement is ambiguous and is therefore a dubious basis upon which to build an argument especially when, as noted above, the entire issue itself is tangential.

The argument also rests on an isolated observation unconnected to all the other evidence. In general, we are skeptical of the probative value of a one-time, minor physical act such as opening a door. This is especially true in this case where plaintiff has submitted medical records substantiating the injuries to both his left and right hands. The judge never evaluated whether this one act was contradictory to all of the medical evidence. Instead, he focused on only on whether it was contradictory to one ambiguous statement extracted from one doctor's report. Further, as a matter of procedure, we find that the judge's reliance on this act was unfair because plaintiff was never given a chance to respond or explain why he was able to open the door with his left hand. It was as if the entire hearing and all the medical records meant nothing and were wiped away in this small departing act.

-11-

Third, the judge concluded that plaintiff's daily activities with antique cars suggested "some capabilities" beyond those "reflected in Dr. Khan's opinion." (R. 23.) This conclusion, like the others, contains little explanation of how it was reached. What are the "capabilities" and how are they inconsistent with the "opinion"? Does this conclusion relate to the left hand, right hand, or both? What is the specific opinion of Dr. Khan? Given that plaintiff testified that he quit working on his antique cars after his heart attack and only drove them for no more than 45 minutes at a time (R. 57), it is not clear how this testimony is relevant to the larger issue of whether plaintiff could work more than four hours a day. The judge did not make any findings about how often plaintiff attended these car shows and whether he did any other physical activity on the same day. *See, e.g., Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("It is indeed difficult for a lay person to understand how a person could suffer from disabling heart disease yet play handball for forty minutes every week. But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.").

In addition to focusing on these three issues, the judge did address, albeit briefly, the more pertinent issue in this case, which is whether plaintiff could work more than four hours a day. This was a limitation imposed by Dr. Dobozi. On this critical issue, the ruling only states the following: "while there is a medical report of a work limitation to four hours a day, even accepting a medical basis for such a limitation, there is no medical reason to conclude that it pertains to anything other than claimant's use of his right arm." (R. 23.) While the judge appears to be accepting Dr. Dobozi's conclusion, in fact he did not. Instead, he pared it down and interpreted it in a narrow way to be solely a limitation on using plaintiff's right arm and not

a limitation that applied to working more generally. We can find nothing in Dr. Dobozi's notes that would suggest that is what he meant. So the judge essentially rejected part of Dr. Dobozi's conclusion.

The problem is that we do not know why he did so. Nor can we even be sure that he seriously reviewed the evidence. The government in its brief asserts that he did and that he "reasonably considered and discounted" Dr. Dobozi's opinion. (Br. at 9.) But we have no way of knowing whether this point is true because the ruling does not discuss any of this evidence.[3]

Moreover, as required by 20 C.F.R. § 404.1527, which is known as the "treating physician" rule, the judge may not simply ignore the opinion of a treating physician. In fact, if the medical opinion is well-supported, the judge is required to give it "controlling weight." § 404.1527(d); *see also* SSR 96-2p ("If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.* it must be adopted."). Even if a judge finds that the medical opinion should not be given controlling weight, he then must assess whether it still should be given some

---

[3]This evidence is not insignificant. Dr. Dobozi's progress notes are at least 16 pages long as plaintiff saw him at regular intervals over several years. *See* R. 165-181. For example, in a February 24, 1992 letter, Dr. Dobozi noted that plaintiff had participated in a "work hardening program" but had not improved despite perfect attendance in the program, leading his physical therapists to conclude that "any further work hardening would [not] improve his situation." (R. 191.) Dr. Dobozi therefore concluded that the nine-pound-lifting and four-hour a day limitations should remain in place indefinitely. (R. 192.) Over a year later, the conclusion was the same -- namely, that the two work limitations should remain in place because plaintiff could not return to his previous level of work activity. (R. 165.) This is thus not a situation where a doctor examined a claimant after one visit and then made a questionable diagnosis based on limited observation and evidence. Although the government in its brief does discuss the evidence in more detail and tries to suggest a reason why Dr. Dobozi's opinion may not be valid, we cannot rely on this after-the-fact rationale. *See Golembiewski*, 322 F.3d at 916 ("general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ").

level of deference. Section 404.1527 sets forth specific factors the judge should consider in making these assessments. These include the examining and treatment relationships, the length of treatment, the degree of specialization of the treating doctor, and the degree to which the opinion is supported by the other evidence. As with credibility determinations, the regulation requires the judge to explain his reasoning: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 404 C.F.R. § 404.1527(d)(2). Here, the judge did not provide any explanation for why he rejected the opinion of Dr. Dobozi. Did the judge apply the above factors? If so, how did they lead to the conclusion that Dr. Dobozi's testimony was not well supported? Based on the one sentence above, it does not appear that the judge was relying on any medical evidence to reject that opinion but was instead relying only on his own reasoning.

But it does not necessarily follow, either as a matter of logic or common sense, that a person who experiences arm pain after working four hours could continue working another four hours with his good arm. To assess this question, one would need to know the specific nature of the pain. Details are again important. Did the pain occur only while plaintiff was using his arm and then go away when he stopped using that arm? If not, how intense was the pain? Did it affect his concentration? Did it cause fatigue? At higher levels of intensity, pain can affect a person's overall functioning and ability to do any complex task. Plaintiff testified that after working four hours in his job as an auto mechanic he would "go home and watch TV, because [his] arm would be tired." (R. 59.) Although the judge apparently disagreed with this testimony, he did not explain why. The facts should be developed further on remand. *See Green v. Apfel*, 204 F.3d 780, 781-82 (7th Cir. 2000) ( the administrative judge improperly "played doctor"

when he analyzed claimant's claim of severe chest pain and when he failed to summon an expert to examine the claimant or his medical records); *Golembiewski*, 322 F.3d at 918 ("the ALJ needed to develop a full and fair record" and should have "elicited more information").

Even if the judge's interpretation had a medical basis, the judge still would need to explain how plaintiff could perform the requirements of the identified jobs by using only his left hand for four hours. The testimony of the vocational expert does not support the conclusion. Although the judge posed two hypotheticals to the vocational expert at the hearing, neither addressed this scenario. The judge first asked whether plaintiff could work as a cashier or routing clerk if his right hand was limited to lifting "no more than nine pounds." (R. 64.) This hypothetical did not contain the four-hour limitation. The judge then asked the vocational expert whether his answers would change if "the person was precluded from working more than four hours a day." (R. 65.) The expert testified that plaintiff would be unemployable in this situation. But the judge never asked the vocational expert the relevant hypothetical that would support his implied conclusion: whether plaintiff could work with both a 9-pound limitation *and* a four-hour limitation on his right arm.

Plaintiff's attorney, however, did focus on this issue, albeit indirectly, when she asked the vocational expert the following questions:

> Q. The jobs of routing clerk and cashier[.] In those positions, is the individual generally going to be using both hands?
>
> A. Yes.
>
> Q. And in, at least in the cashiering jobs, particularly depending on the location, there may be times where the cashier is going to have busier times, and where they're going to be expected to keep up a pretty solid pace?

A. Yes.

(R. 66.) This testimony suggests that the vocational expert did not believe that plaintiff could work as a grocery store cashier using only one arm for half the day. Moreover, in analyzing this issue, one must also take into account a fact not heretofore mentioned. Plaintiff was right-handed. Therefore, he would have to work half his work shift using only his weak hand.

The above issues are the key issues requiring a remand. A few other issues remain. Plaintiff complains that the judge erred in not taking borderline age issues into consideration. On the date of last insured, plaintiff was just 32 days shy of his 50th birthday. If plaintiff had been 50 on this date, then the judge would have been required to find that he was disabled. 20 C.F.R. Part 404, Subpart P, Appendix 2, Listing 201.10. Relying on 20 C.F.R. § 404.1563, plaintiff argues that the judge was required to "take into consideration" that plaintiff was on the borderline of "closely approaching advanced age." (Pl. Mem. at 14.) Section 404.1563(b) states (emphasis added):

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, **we will consider whether to use** the older age category after evaluating the overall impact of all the factors of your case.

Plaintiff concedes that this section does not require the judge to find that plaintiff was in the older category, but that it does requires the judge to "consider" the issue. There is no evidence that the judge did so here, and he therefore should also consider this issue on remand. Plaintiff also argues that the judge should have taken into consideration that he suffered from alcoholism and depression. However, we do not see why these issues are relevant given that plaintiff testified that he suffered from these problems from approximately 1984 to 1988. *See* R. 55

(plaintiff testified that he quit drinking in 1988 and has suffered no relapses). In any event, on remand, the judge should reconsider all of the evidence in its totality and should provide a more detailed explanation for his conclusions.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is granted and this case is remanded for further consideration by the Social Security Administration. Defendant's motion for summary judgment is denied.

**ENTER:**

_____
JOHN A. NORDBERG
Senior United States District Court Judge

DATED: August 2, 2007